Our final case for this morning is Craig Harris v. Office of the Chief Judge of the Circuit Court of Cook County and others. Mr. Parryko. Good morning, Justices. May it please the Court, my name is Anthony Parryko. I represent the appellant, Craig Harris. This is an appeal of Judge Blakey's granting of a county motion for summary judgment and we believe that that was in error because this report, as it was stated in our brief, should not be making credibility determinations when there are facts that are disputed, material facts that are disputed in controversy. What Judge Blakey did, in fact, is engage in weighing of the facts and finding in favor of the county that their version of the facts was more favorable than the plaintiff's version of the facts and in doing so invaded the domain that should be reserved for the jury. There are clear issues of material fact which are disputed here, whether the youth development specialists, which both Mr. Harris and his partner, Ms. Terperstra, were at the time of the incident in July of 2012, they were working as a third shift at the juvenile detention facility from 10 a.m. until 6, 10 p.m. rather, until 6 a.m. Right, so the position that the juvenile center took, I'll just call it that, was that it was a joint responsibility to make sure that these checks were made and the paperwork properly reflected it. And the other thing that I'm concerned about with your position is I don't see what difference it makes whether Ms. Terpstra had one prior disciplinary event when she got extended probation or whether it was zero because it was still considerably less than Mr. Harris had. So one or zero seems to me not a material fact. We can assume consistently with Mr. Harris' position that the extended probation was characterized as discipline, but you're still in a difficult situation coming up with a story that they're so comparable that he can prove discrimination by the different treatment. Well there are certain facts that are not in dispute, namely Craig Harris is a 60-year-old African-American male. He's been at the facility a decade. And his partner, Ms. Terpstra, was a 40-year-old white female. But she didn't have a disciplinary record as long as his. Because she was not there as long. It doesn't matter though. I'm not disputing that. I don't know why you're mentioning it then. I'm not disputing that fact. However, Judge, there's been no evidence that in fact this logging every 15 minutes into a logbook of the events going on during an eight-hour shift, Ms. Terpstra testified in her deposition that she assumed the responsibility for entry in these 15-minute logs. That's correct. And it was nice of her to do that. But apparently the juvenile center, the county, whoever, took the position that whatever she might have said to try to take a hit, it was actually a joint responsibility as far as they were concerned for both people. Right. So in an eight-hour shift, there are 32 15-minute entries. Ms. Terpstra didn't make two at the end of their shift. It wasn't Mr. Harris. Mr. Harris had nothing to do with it. They imputed liability to Mr. Harris because it was a joint responsibility. Because he was supposed to be doing it. was to be done by one person or another. It had to be done in a certain manner. This was a custom and usage and practice. That's not what the county said, though, is it? Well, that's one of the disputed facts, which we never got into because Judge Blakey gave more credibility to the affidavit and the statement of the county witnesses than he did to Ms. Terpstra and Mr. Harris's testimony, that in fact this wasn't the case, that other people who did the exact same thing, namely did not enter an entry for this 15-minute log. But Judge Blakey was concerned, was he not? I think I remember this, that there wasn't enough. Had you been able to come forward with some of these other people, that would have been one thing. But he says that you failed to remember or cite any other details about these unidentified people and Mr. Harris didn't know the names of these people, let alone, as he writes on page 8, provide any other specifics. So I guess there's a proof problem here, you know, a proffer of evidence. I don't really mean proof, I mean maybe an affidavit from somebody, something that would back up what you're saying. Judge, Craig Harris and Ms. Terpstra's testimony is just as credible as the hearing officer Bruce Berger's or Earl Dunlap's or anybody else's for that matter. And we have stated facts which are part of the court record where exact opposite view was presented by the plaintiff and by his partner, Ms. Terpstra. So what the judge did, Judge Blakely did here, is he waived the credibility and testimony of the respective different versions of these facts and he imputed intent and motivation and ascribed more credibility to one side than the other. And what we're simply saying is, Judge, that's improper. That should be left to the jury, to a trial, when all the facts can be fleshed out and presented. And clearly, you know, the summary judgment standard is that there are no material facts in dispute and no other conclusion can be reached in favor of the non-moving party. And that's clearly, with all due respect to Judge Blakely, not the case here. Judge, there are many disputed facts, among them some of the most salient ones. And we would argue, Judge, that what happened here is, you know, they used this to get rid of Mr. Harris, you know, give him a 25-day suspension when his partner got just a one-day suspension. And they knew that he was a union member at the juvenile detention facility. And, you know, Earl Dunlap stated, Judge, in October 2009 in the Doe v. Cook County case, that he doesn't have to worry about the union rules and collective bargaining agreement or due process or the constitutional protections because he had the protection of the federal court and he can do whatever he wanted. And they tried to use this incident as a pretext to get rid of a 60-year-old African-American male whom they didn't want to have there because they wanted to bring in new people with master's degrees and other background information that they thought was more suitable for the task of monitoring these juveniles. So it was a pretext, and that's all it was. But, you know, Judge Blakely, when he had two sets or two versions of facts, should not have engaged in a jury exercise, you know, who do we believe here, who's more credible, Bruce Berger or Craig Harris or Ms. Starkstraw. I mean, he should have just... You're in your rebuttal time, you know, but you go ahead. I will stop there. If you'd like to save a little bit of time, that would be fine. Yes, I will. Thank you, Judge. All right. Thank you. Mr. Kargi. Good morning, Your Honor. My name is Thomas Kargi. I represent Earl Dunlap and the Office of Transitional Administrator in this case. Throughout this case, the plaintiff has sort of conflated two different concepts. The cause of action is that he was punished more severely than Ms. Terpstra because he's African-American, he's male, and he's over 40 years old. But in front of you, and much of his appellate argument was devoted to the argument that he should never have been punished at all. But that's not a proper matter. That was never, that was a claim. I was going to ask you whether the question, whether there's a policy about everybody being responsible to record these things in the log, and if so, whether there's a dispute about how consistently that policy is administered, is here in the case. Well, first of all, Your Honor, the plaintiff, Mr. Harris, advocated some sort of like Lord of the Flies rule where the employees can just decide what rules they're going to follow and what rules they won't. It was a clear rule that everyone had to ensure that the 15-minute door checks were done. Now, when you say it's a clear rule, was it written down in some book somewhere, or is it something that employees were instructed about when they joined the office, or what? Employees were aware that they were to accomplish all of their tasks. That was a rule, and the declaration of a person's name I forget right now expressly said that. He was the executive director of the Office of Residential Life, to whom all the youth counselors reported. There may be some chores that are delegable. For instance, they mentioned bringing lunch to the kids. That can, obviously, you don't need two people to do that. But the point here is door checks is vital to the mission of the facility. Obviously, we're talking about younger kids. Suicide is an apparent risk. All Mr. Harris had to do was ask Ms. Terpstra if she had done the door checks, if she had recorded the door checks. We're not saying that he had to go back and double-check things, but it was his responsibility to make sure that it was done, and that's not too much to ask. His suggestion that somehow, well, it was her responsibility, so therefore it's not mine, just flies in the face of the responsibilities of these counselors. Again, going to the lunch. So, are there any facts in the record that would dispute that, other than Mr. Harris's testimony that it was delegable? There are certainly no official records or policies that can be pointed to by the plaintiff to suggest that it is a delegable duty. But you were starting to say that, actually, the starting point had been that they both violated whatever this rule was, and that this case is really only about the discrepancy in punishment. Yes, sir. Okay. If you can continue with that. In Ortiz, this Court said, the sole question in reviewing summary judgment motions in employment discrimination cases is, is there sufficient evidence that a reasonable jury could determine that but for the, in this case, race, gender, and age of the plaintiff, he would have been treated differently? And in this case, there isn't. As Your Honor pointed out, Ms. Terpstra only had one, even if we assume probation extension could be considered a violation of JTDC rules, there's only one. Mr. Harris had five. He admitted to having five. So that is, as this Court said in both Radue and in Arnall, the differences in disciplinary histories is sufficient dissimilarity to render those other employees dissimilar. I know that the Court overruled Radue in Ortiz, but certainly not that aspect of Radue. That's still a valid proposition in this circuit. And so that's the point here. His only comparator that's valid is Ms. Terpstra. Ms. Terpstra had a minimal disciplinary history. Mr. Harris had an extensive disciplinary history. The other employee that he talks about is just way too sketchy for the Court to give any credence at all that it could be a valid comparator. It may well be that person, whoever that person is, has a similar minimal disciplinary history. And that's the important point. Oh, this is the unnamed person? Yes, Your Honor. That was the one that Mr. Harris spoke about. There's also the one that Mr. Sanchez spoke about, but that doesn't even go to discipline. That was more about, first of all, it was hearsay. But that goes to someone who was allegedly not written up for doing something. But again, we don't know that it was a 15-minute door check. We don't know what it was. So you can't rely on that because, as this Court has said, there has to be sufficient basis to make a valid comparison. And that's not here. Most importantly, Mr. Breyk was talking about pretext, that this was all pretext to get rid of Mr. Harris. I would point out to Your Honors that Mr. Harris didn't even argue about pretext, didn't refute the pretextual argument in his briefs. He made an argument that somehow because we answered the claim incorrectly that the Court should just ignore the pretext argument. There is no reason to disbelieve Bruce Berger when he testified that the reason that he imposed a 25-day suspension for Mr. Harris was because of his disciplinary history. And there's no reason to dispute that Mr. Berger proposed a one-day suspension for Ms. Terpstra for the same reason, that she had a minimal disciplinary history. The question of whether or not to impose, whether or not to find them both liable for the rule violation, isn't a matter of discrimination. It's at most a matter of the wisdom of the JTDC to have this rule, to find both of them liable for an act one of them committed. But that goes to the concept of he's asking the Court to be a super-personnel department, to question the wisdom of finding both of them liable for the same infraction. He can't claim that it was because of discrimination, because obviously they were both punished. It's the severity of the punishment that matters. And as to that question, there is no evidence to suggest that the sole reason for doing it was because of Mr. Harris's race, gender, or age. Fair enough, do you have any other questions? Apparently not, so thank you very much. So I think you have about a minute, Mr. Prokop. First of all, there is no rule or county policy that governs or mandates 15-minute entries into a log. There is none, and the record doesn't contain that. Second, Ms. Terpstra, who agreed and volunteered to handle that portion of the third shift responsibilities as she worked together with Greg Harris, stated that she did all the checks, all 32 of them, during an eight-hour shift. She forgot to log two. So she did the checks, but forgot to log two. And she admitted that during her deposition, that she forgot to log them. With respect to plaintiff Mr. Harris's five disciplinary actions, previous actions, all of those were grieved, and he demanded to have them arbitrated, but could not because Mr. Dunlap refused to set an arbitration hearing date. So all of those were disputed, and all of them were grieved, and arbitration was requested, and a date would not be set by Mr. Dunlap. Mr. Dunlap was the ultimate arbiter, not Bruce Berger, who was just a hearing officer. But the point here is that this custom and practice was not a county policy or a county rule. It did not mandate that one or the other should do it. There was no prohibition to delegation, Judge, and the judge abused his discretion and granted a separate judgment. Thank you. All right, thank you very much. We'll take the case under advisement, and the court will be in recess.